UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEPH FRONGILLO, <br>     Petitioner, | ) <br> ) <br> ) | |
| v. | ) <br> ) | Civil Action No. 08cv10802-NG |
| LUIS SPENCER, <br>     Respondent. | ) <br> ) <br> ) | |

GERTNER, D.J.

## MEMORANDUM AND ORDER
### July 19, 2011

## I. INTRODUCTION

Joseph Frongillo was convicted in Massachusetts State Court for armed assault with attempt to murder, assault and battery by means of a dangerous weapon, possession of a firearm without a license, two counts of possession of a firearm without a Firearms Identification ("FID") card and possession of ammunition without an FID card. On Frongillo's direct appeal, the Massachusetts Appeals Court ordered judgments of acquittal for Frongillo on the charges of possessing a firearm and ammunition without an FID card while also affirming his other convictions.

Frongillo filed a habeas corpus petition, claiming his state court conviction was unconstitutional under federal law as his "trial and appellate counsels' behavior fell below an objective standard constituting ineffective assistance of counsel on several grounds."[1]

---

[1] See Mem. of Law Supporting Pet'r's Pet. Writ for a Habeas Corpus (document #13). Frongillo's Mem. of Law in Supp. of His Pet. is largely incomprehensible. Based on a careful reading of his petition and memorandum of law in support of his petition, it has been construed that Grounds One through Four of his Petition are claims of ineffective assistance of counsel. Further, because the specific bases for the ineffective claims are unclear, this memo has addressed only the ineffective claims raised by Frongillo in state court.

In addition to the claims raised in Frongillo's petition, Frongillo's Mem. of Law in Supp. of his Pet. raises three additional claims, which are contingent upon his claims for ineffective assistance of counsel. In other words,

Specifically, Frongillo asserts that his trial counsel rendered ineffective assistance by (1) failing to move the court to sever extraneous firearm and ammunition charges and/or (2) failing to move the court to suppress extraneous firearm and ammunition evidence; and (3) failing to properly object to Detective Goodwin's testimony regarding Frongillo's unrelated arrest for possession of cocaine.

Frongillo's petition must ultimately fail for want of evidence of his lawyer's ineffectiveness. In addition, even if he could make that showing, the petition must still fail as he is unable to offer sufficient evidence as to prejudice.

## II. BACKGROUND[2]

On May 23, 2001, Joseph Frongillo ("Frongillo") and Ronald Cavanaugh ("Cavanaugh") were at Zeke's Lounge ("Zeke's"), a bar in Revere, Massachusetts. Cavanaugh and Frongillo were acquainted, but were not friends. SA-II[3] B: 78. While at Zeke's, Cavanaugh approached Frongillo to complain about the quality of cocaine he had previously purchased from a third party who had allegedly originally received the cocaine from Frongillo. SA-II B: 80. Frongillo responded by waving a black handgun at Cavanaugh. SA-II B: 81-83. As the argument escalated, the bouncers asked Cavanaugh to leave and escorted him from the bar. Through the window of the bar, Cavanaugh and Frongillo exchanged indecent gestures; Frongillo continued to wave the gun.

---

the additional claims are without merit if Frongillo is unable to show ineffective assistance of counsel.

[2] This recitation of the evidence and testimony adduced at Frongillo's trial largely follows the Massachusetts Appeals Court's presentation of the facts in Commonwealth v. Frongillo (No. 1), 66 Mass. App. Ct. 677 (2006) [hereinafter Frongillo I] and Commonwealth v. Frongillo (No. 2), 66 Mass. App. Ct. 1115 (2006) [hereinafter Frongillo II]. We clarify certain facts by citing the trial transcripts, excerpts of which are on file with this Court.

[3] Supplemental Answer, which contains trial transcripts, hereinafter referred to as "SA-[Volume]."

Cavanaugh then went to B.K.'s Lounge ("B.K.'s"), another bar nearby. Approximately 30 minutes later, Frongillo and another man, Ronald Stevens ("Stevens") came into B.K.'s. Frongillo approached Cavanaugh and asked him to come outside so they could talk. While outside, Frongillo apologized and asked Cavanaugh to shake his hand. Cavanaugh refused and turned to walk away. As Cavanaugh was walking away, he was shot in the back. SA-II B: 110-113. Cavanaugh turned around, saw Frongillo holding a gun, and fell into him. Cavanaugh then saw Frongillo fire the gun a second time, now shooting Cavanaugh in the left thigh. Cavanaugh fell backwards onto the ground. While on the ground, Cavanaugh looked up at Frongillo, who still had the gun in his hand. SA-II B: 114-117. After Frongillo fired a third shot, Stevens pushed Frongillo out of the way; they both ran from the scene.

Michael Tsoukalas ("Tsoukalas"), a Massachusetts Bay Transportation Authority ("MBTA") coin collector at the Revere Beach train station testified that he saw Frongillo and Stevens "ganging up" on Cavanaugh outside of B.K.'s prior to the shooting. SA-II C: 257-258. After hearing gun shots, Tsoukalas saw Frongillo and Stevens running down a side street. SA-II C: 269. Tsoukalas then saw Cavanaugh bleeding in the road, asking for help. Tsoukalas informed a nearby State Trooper of Cavanaugh's condition. SA-II C: 271. Cavanaugh told the State Trooper that Joseph Frongillo shot him. SA-II B: 120.

Detective Brian Goodwin ("Goodwin") was assigned to investigate the case. As a result of the investigation, the police went to an apartment located at 428 Revere Street in Winthrop, looking for Frongillo and any evidence relating to the shooting. Lisa Carrozza ("Carrozza"), who was renting the Winthrop apartment and was Frongillo's fiancée, answered the door and consented to a search. Frongillo was not present. Carrozza, in response to questions from the

police, led them to two closets. In the first, police found a .22 caliber revolver which was not stored in a case, and a locked gun case that was later found to contain ammunition. In the second was another firearm case containing a shotgun and shotgun ammunition. Neither Frongillo nor Carrozza had a license to carry a firearm.

Several days after the shootings, Frongillo voluntarily turned himself into the police. SA-I N: 14. On June 28, 2001, a Suffolk County Grand Jury indicted Frongillo on six charges: armed assault with intent to murder; assault and battery by means of a dangerous weapon; possession of a firearm without a license; two counts of possession of a firearm without an FID card; and possession of ammunition without an FID card.[4] The charges of possession of firearms and ammunition without an FID card were indicted under the Massachusetts armed career criminal statute, Mass. Gen. Laws ch. 269, § 10G. SA-I N: 3.

Frongillo's trial began on May 6, 2003. The motive for the shooting was alleged to be an underlying dispute relating to the quality of drugs in a transaction between the victim and a third-party seller, who received the drugs from the defendant. Frongillo II, 2. At trial, Frongillo denied that he used illegal drugs at all, or sold them to Cavanaugh. SA-II D: 153. Later during Frongillo's testimony, defense counsel asked:

> Q: What specifically? Do you remember what [Cavanaugh] asked you about the drugs?
>
> Frongillo: Yeah. He was mad. He said he got a bad batch of cocaine and he wanted me to straighten it out, and I asked him, "What do you expect me to do with that? You're not supposed to be doing this in the club

---

[4] The two counts possession of a firearm without an FID card and possession of ammunition without an FID card resulted from the firearms and ammunition recovered from the search of Lisa Carrozza's apartment. There is no claim that the items recovered in search of Carrozza's apartment had any connection to the shooting incident.

-4-

| | |
|---|---|
| | anyway." He said well the individual that sold it to him told him to come see me if he had a problem. |
| Q: | And did that surprise you? |
| Frongillo: | Yes, it did. |
| Q: | Why? |
| Frongillo: | Because, we don't – its not– this is an alcoholic establishment. This is not a pharmaceutical place. We don't sell drugs there. Why he would come to me if he had a problem with his drug use or his purchase of a drug use or whatever he does, you know, I don't understand why he came to me with this. |
| Q: | So what did you tell him? |
| Frongillo: | I told him I have nothing to do with that and I don't want anything to do with that and you're going to have to leave the bar. |

SA-II D: 157-159. At that point, the prosecutor, during a bench conference, asked the court if he could introduce a pending drug charge to attack Frongillo's credibility. SA-I N: 17. Despite objections made by defense counsel, the judge permitted the testimony. Detective Goodwin testified that he arrested Frongillo on November 15, 2001. The arrest resulted from the discovery of a large clear plastic bag that contained 19 smaller bags of cocaine at Frongillo's feet in his automobile. SA:II D: 295-296.

On May 12, 2001, the jury found Frongillo guilty of all charges. On July 10, 2006, the Massachusetts Appeals Court ("Appeals Court"), ordered judgments of acquittal for Frongillo on the charges of possessing a firearm and ammunition without an FID card. SA-I I: 10; Frongillo I. The Appeals Court concluded that there was insufficient evidence to establish constructive possession of the firearms and ammunition by Frongillo. Frongillo I. It noted: "Although

[Frongillo] had access to the closets, and thus knowledge of the items and the ability to control them could be inferred, such evidence was insufficient to permit a reasonable inference that he intended to exercise dominion and control over them." Id. at 683-684. The Appeals Court also, in an accompanying unpublished opinion, affirmed Frongillo's remaining convictions. SA-I J: 3; Frongillo II, 1. On September 11, 2006, the Supreme Judicial Court ("SJC") denied Frongillo's petition for further appellate review. SA-I L: 1.

Frongillo filed a motion for new trial in the Superior Court on January 5, 2007, SA-I A:8, claiming ineffective assistance of counsel. SA-I M: 2-21. On January 24, 2007, the trial judge denied Frongillo's motion, asserting that there was insufficient evidence to establish ineffective assistance of counsel. SA-I A: 8. Frongillo appealed. SA-I D: 1. The Appeals Court affirmed the denial of Frongillo's motion in an unpublished decision on March 14, 2008. SA-I D: 2; S: 1. Frongillo filed an application for further appellate review in the SJC on April 4, 2008 which was denied on April 30, 2008. SA-I E: 1.

This petition under 28 U.S.C. § 2254 followed on May 9, 2008.

## III. DISCUSSION

### A. Governing Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limited the power of a district court to grant habeas relief:

> With respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Court has stated that "clearly established federal law "refers to "the holdings, as opposed to the dicta" of the Supreme Court's decisions "as of the time of the relevant State-Court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court's decision is "contrary to" this clearly established Federal law if the State Court arrives at a conclusion opposite of that reached by the Supreme Court on a question of law, or if the State Court arrives at a result different than that reached by the Supreme Court on a set of materially indistinguishable facts. Id. at 405-406; 412-413.

A State Court's decision falls under the "unreasonable application" clause only if "the State Court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. In Williams, the Supreme Court also stressed that an unreasonable application of Federal law is different from an incorrect application. Id. at 410. The burden is on the petitioner to show that the State court's decision applied the clearly established law in an "objectively unreasonable manner." Id. at 409-10.

In Williams v. Taylor, 529 U.S. at 390-391, the Supreme Court held that the "clearly established Federal law" for analyzing claims of ineffective assistance of counsel is articulated in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court recognized that the right to counsel guaranteed by the Sixth Amendment includes "the right to the effective assistance of counsel." Strickland, 466 U.S. at 686. The principles set forth in Strickland were formulated into a two-prong test. To successfully show ineffective assistance of counsel, the petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the

deficient performance prejudiced the defense. Id. at 669; see also United States v. Hebshie, 754 F. Supp. 2d 89, 111 (D. Mass. 2010).

To show deficiency in counsel's performance, the claimant must identify the specific acts or omissions of the attorney's conduct which fall below an "objective standard of reasonableness" established by "prevailing professional norms." Id. at 669, 688. To demonstrate prejudice the claimant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In other words, the fact finder would have had a reasonable doubt respecting guilt. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694.

## IV. THE MASSACHUSETTS APPEALS COURT'S DECISION

Frongillo claimed that his trial attorney rendered ineffective assistance by failing to suppress certain evidence and to properly object to testimony regarding an unrelated drug charge. Specifically, Frongillo claims that his counsel failed to have evidence of the guns and ammunition found at his fiancee's apartment, Lisa Carrozza, either suppressed or excluded from his trial. His counsel, according to Frongillo, failed to file a motion to suppress and/or a motion to sever the firearms and ammunition charges. Next, Frongillo claims that his counsel failed to properly object to Detective Goodwin's testimony regarding Frongillo's unrelated arrest for possession of cocaine. Frongillo avers that these errors severely prejudiced his chance for a fair trial. The question before this Court is whether the Appeals Court, denying relief, was contrary to, or an unreasonable application of, the standard set forth in Strickland.

The Appeals Court, applying the standard set forth in Commonwealth v. Saferian, 366 Mass. 89, 96 (1994), ruled that counsel's alleged failure to exclude or suppress the evidence of

firearms and ammunition found at Lisa Carrozza's apartment and to properly object to Goodwin's testimony did not constitute ineffective assistance of counsel. The standard set forth in Saferian tracks that of Strickland, namely,

> [W]hether there has been a serious incompetency, inefficiency, or inattention of counsel - behavior of counsel falling . . . below that which might be expected from an ordinary fallible lawyer - and, if that is found then . . . whether it has deprived the defendant of an otherwise available, substantial ground of defense.

Mello v. DiPaulo, 295 F.3d 137, 144 (1st Cir. 2002). Thus, "if the Saferian test is met, the federal test [Stickland] is necessarily met as well." Commonwealth v. Fuller, 394 Mass. 251, 256 n.3 (1985). As such, the Appeals Court, in their decision, did not use a test that was "contrary to" the "clearly established federal law" as described in Strickland.

The next issue is whether the Appeals Court's holding that Frongillo's counsel was effective was an unreasonable *application* of the Strickland standard.

### A. Evidence of Guns and Ammunition Found at Lisa Carrozza's Apartment

Frongillo must offer sufficient evidence to show that the Appeals Court unreasonably applied Strickland in considering the claim that his counsel was ineffective with regards to the admitted evidence of guns and ammunition found at Lisa Carrozza's apartment.

Frongillo's first claim, that the Appeals Court's conclusions concerning counsel's failure to sever the ammunition and firearm charges, is unreasonable. See Vieux v. Pepe, 184 F.3d 59, 66 (C.A. 1 Mass. 1999). Under Massachusetts law, a decision to join offenses for trial is committed to the sound discretion of the trial judge. See Commonwealth v. Gaynor, 443 Mass. 245, 260 (2005). The defendant bears the burden of demonstrating that the offenses were unrelated, and that prejudice from joinder was so compelling that it prevented him from

-9-

obtaining a fair trial. Id. The Appeals Court concluded Frongillo did not meet that burden. Given AEDPA's stringent standards, I cannot say otherwise.

Frongillo's next argues that counsel could have successfully moved to suppress the evidence found in Carrozza's apartment. Frongillo never describes the basis of a motion to suppress. It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. Id. As the trial record clearly indicates, Carrozza freely and voluntarily consented to the search of her apartment by the police, leading them to two closets which contained the firearms and ammunition. In fact, Carrozza signed a consent form with the police allowing them to search her apartment as well as her automobile. See SA-II C: 101-105. The Appeals Court properly concluded that, under Strickland, Frongillo's counsel was not ineffective for failing to move to suppress the firearms and ammunition evidence found at Carrozza's apartment, nor did counsel's failure to move to suppress result in prejudice suffered by Frongillo.

### B. Detective Goodwin's Testimony

Frongillo must offer sufficient evidence to show that the Appeals Court unreasonably applied Strickland when they considered claims of ineffective assistance of counsel concerning the testimony of Detective Goodwin.

Frongillo's claim that his counsel failed to properly object to Goodwin's testimony is contradicted by the trial record. According to the trial record, at bench conference, Frongillo's

counsel vigorously objected to the testimony of Goodwin. See SA-II D:205-212. Frongillo's counsel even sought opportunity to provide case law to make a proper showing of the inappropriateness of Goodwin's testimony. Id. at 212. The Court overruled defense counsel's objection and allowed Goodwin's testimony. Prior to closing arguments, Frongillo's counsel also moved for mistrial on this ground. Counsel asserted a mistrial was the only option claiming that, because of the admittance of Goodwin's testimony, there "is no instruction that can cure the evidentiary defect that was created." See SA-II E: 5. The motion for mistrial was denied by the trial judge. As such, the Appeals Court did not unreasonably apply the Strickland standard when reviewing this claim for ineffective assistance of counsel.

## V. CLAIMS OF INEFFECTIVE APPELLATE COUNSEL

Frongillo also claims that his appellate counsel was ineffective for failing to raise the same issues discussed above. Respondent must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal -- that is, that counsel unreasonably failed to discover non-frivolous issues and to file a merits brief raising them. See Smith v. Robbins, 528 U.S. 259, 285 (2000). If the claimant succeeds in such a showing, he "then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." Id.

Frongillo has failed to offer any sufficient evidence to show ineffective assistance of appellate counsel. Indeed, Frongillo's memorandum fails to cite any significant actions taken by appellant counsel which he believes to be deficient. As such, the Appellate Court's finding that appellate counsel was effective was not objectively unreasonable.

## VI. CONCLUSION

Joseph Frongillo's petition for habeas relief concerning claims of ineffective assistance of counsel fails as he is unable to show that the Appeals Court applied the clearly established federal standard set forth in <u>Strickland v. Washington</u> in an objectively unreasonable manner.

For the reasons set forth above, this case is **DISMISSED.**

**SO ORDERED.**

**Date: July 19, 2011**              */s/ Nancy Gertner*
                          **NANCY GERTNER, U.S.D.J.**